UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 1:12-cv-000138-FDW

| | |
|---|---|
| SUZAN BUMGARNER,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of Social Security,**<br><br>Defendant. | ORDER |

**THIS MATTER** comes now before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 12), filed on November 20, 2012, and Defendant's[1] Motion for Summary Judgment (Doc. No. 16), filed on February 21, 2013. These motions have been briefed, and the matter is ripe for review.

For the reasons set forth, Plaintiff's Motion for Summary Judgment is DENIED and the Commissioner's Motion for Summary Judgment is GRANTED. Accordingly, the ALJ's decision is AFFIRMED.

### I.  BACKGROUND

Plaintiff Suzan Bumgarner ("Plaintiff") is a smoker, and she has a medical history of

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin will be substituted for Michael J. Astrue as the Defendant in this matter. Pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action is necessary.

1

asthma, several pulmonary checks, and a number of trips to the Emergency Room due to shortness of breath. (Doc. No. 13, p. 2). After Plaintiff's alleged disability onset date, she reported to her doctor in May of 2009 that she had to sleep upright to enable easier breathing and prevent coughing. Id. At that time, her height was recorded as five foot eight inches (5'8"). (Tr. 361).

In July of 2009, Plaintiff underwent a pulmonary function assessment through spirometry testing after a consultative examination with Dr. Kuremsky. (Doc. No. 13, p. 3; Tr. 376-78). Her one-second forced expiratory volume ("$FEV_1$") from that test was 1.3, 1.2, and 1.2 for 3 trials before use of a bronchodilator, and 1.25, 1.2, and 1.2 for trials conducted after the use of a bronchodilator. (Tr. 376-77). Her height without shoes was recorded as five foot five inches (5'5"). Id.

In August of that year, Plaintiff submitted to a psychological consultative examination for asthma and cervical and lumbar degenerative disc disease. (Doc. No. 13, p. 3). Her height was noted at "about" five foot seven inches (5'7"). (Tr. 381-90). In September of that year, Plaintiff went to the Mission Hospital Emergency Room due to exacerbation of her asthma. (Doc. No. 13, p. 3). It was noted that Plaintiff claimed she had previously "been diagnosed with chronic obstructive pulmonary disease by Mountain Allergy and Asthma Associates." (Tr. 432).

On September 24, 2010, Plaintiff went to the Allergy Partners of Western North Carolina. (Doc. No. 13, p. 4). She was noted to be five foot six inches (5'6"), and after spirometry testing, her "COPD [r]isk" level was recorded as "very high." Id.; (Tr. 821-22). Her pre-bronchodilator $FEV_1$ results from that test were 1.03, 1.10, and 1.07. (Tr. 822). There was no mention of a bronchodilator later being used, nor was there mention of a bronchodilator being contraindicated.

Id.

## II. PROCEDURAL HISTROY

Plaintiff, with counsel, seeks judicial review of the unfavorable decision issued by the Administrative Law Judge ("ALJ") and the Appeals Council ("Council"). (Tr. 22-39; Tr. 1-6). Plaintiff filed an application for supplemental security income for an alleged inability to engage in gainful employment on April 8, 2009, which was denied by Social Security. (Tr. 99-112; Tr. 59-64: Tr. 66-69). Plaintiff requested a hearing before the ALJ, which was conducted on October 18, 2010. (Tr. 71; Tr. 40-48). The ALJ found the Plaintiff was not disabled on October 29, 2010, and the Council denied Plaintiff's request for a review on April 30, 2012. (Tr. 22-39; Tr. 1-6). This resulted in in the final decision of the Commissioner of Social Security. 20 C.F.R. § 416.1455, 416.1481.

Plaintiff filed this action on June 13, 2012, and the parties' motions are ripe for the Court's review under 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

42 U.S.C. § 405(g) grants this Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Social Security Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Id. It is the Court's duty to determine both whether the findings of the commissioner are "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389, 390 (1971).

Substantial evidence has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing Richardson v. Perales, 402 U.S. 389, 390 (1971)). The Fourth Circuit has recognized "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456. The Court may set aside a determination of the ALJ only if it is not supported by substantial evidence or it is based upon legal error. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term is defined for Social Security purposes, between April 8, 2009, and the date of the ALJ's decision on October 29, 2010. (Tr. 99-112; Tr. 59-69; Tr. 28-34). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled[2] within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

On October 29, 2010, the ALJ found that Plaintiff was not "disabled" at any time between April 8, 2009, and the date of his decision. (Tr. 28-34). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.).
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.).
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.).
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 404.1560(b).
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 404.1560(c).

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the third step that Plaintiff was *not* disabled, but he did not specifically discuss Listing 3.02 when making his determination. (Tr. 28). The ALJ went on in the fourth step to determine that, while Plaintiff has no relevant past work to return to, she has the residual function capacity ("RFC") to engage in light work,[3] with jobs such as cashier or hand packager, and could therefore still engage in gainful

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

employment. (Tr. 29-34).

On appeal to this Court, Plaintiff argues that the ALJ incorrectly assessed Plaintiff's impairment, and that the ALJ reached this incorrect determination "without citing laws or facts of Listing 3.02." (Doc. No. 13, p. 6). Plaintiff contends that she meets the qualifications under Listing 3.02. Id. at 7-8. Listing 3.02 for chronic pulmonary insufficiency states that:

> Chronic obstructive pulmonary disease, due to any cause, with the $FEV[1]^4$ equal to or less than the values specified in table I corresponding to the person's height without shoes.

20 C.F.R. Part 404, Subpart P, Appendix I § 3.02A. Plaintiff notes three assignments of error for the ALJ's conclusions: (1) Plaintiff has chronic obstructive pulmonary disease ("COPD"); (2) the highest $FEV_1$ results in her medical record are equal to or less than the values in Listing 3.02; and (3) the ALJ failed to reference the pulmonary test results in his evaluation and came to his conclusion that Plaintiff was not disabled "without reciting the law or facts as to Listing 3.02." (Doc. No. 13, pp. 6-8). The undersigned will discuss these contentions in turn.

### A. <u>ALJ's Conclusion that Plaintiff does not have COPD</u>

Listing 3.02 for chronic pulmonary insufficiency requires that the individual in question must be diagnosed with COPD, regardless of the cause. 20 C.F.R. Part 404, Subpart P, Appendix I § 3.02A. Due to the similarity in symptoms of respiratory disorders with other ailments, the diagnosis of a disorder, such as COPD, must be established via "a thorough medical history, physical examination, and chest x-ray or other appropriate imaging technique." Id. at 300A. If there is no such documentation, current medical evidence and an ongoing medical history can assist an examiner in finding cause to believe in the existence of a current respiratory

---

[4] Based on the context of the Listing and the submitted documents, FEV, FEV[1] and $FEV_1$ refer to the same value for the purposes of this order. 20 C.F.R. Part 404, Subpart P, Appendix I § 3.00E; (Doc. No. 13; Doc. No. 17).

disorder and assessing the severity of the impairment. Id.

In this case, Plaintiff's medical records are inconsistent, with statements made by Plaintiff as early as September 9, 2009, saying that she "had been diagnosed with [COPD]," even though Plaintiff has submitted no reliable evidence to support this claim. (Tr. 432-33). There appears to have been no assessment in isolation that definitively diagnoses Plaintiff with COPD. Plaintiff's assertion of a prior diagnosis of COPD, without supporting evidence, is insufficient. 20 C.F.R. Part 404, Subpart P, Appendix I § 3.00A. Other records simply state that Plaintiff gives the "impression [of having] COPD." (Tr. 816-18). In July of 2009, however, pulmonary testing revealed that Plaintiff was "negative for COPD." (Tr. 378). Defendant argues that the most recent spirometry testing in 2010, describes Plaintiff's "COPD [r]isk" level as "very high," implying that it is not certain that the Plaintiff had COPD at the time. (Doc. No. 19, p. 4; *see* Tr. 822).

Based on substantial evidence, it was reasonable for the ALJ to conclude that Plaintiff did not have COPD.

### B. ALJ's Contention that the FEV$_1$ Results do not meet Listing 3.02 Standards

Even if the ALJ might have concluded that Plaintiff has COPD based on the medical records, the highest FEV$_1$ results do not meet the specifications under Listing 3.02. The Listing requires that the noted FEV$_1$ result be the highest of at least three trials, regardless of which tracing (before or after use of a bronchodilator) the result is taken from. Higgins v. Callahan, 983 Sup. 865, 871 (E.D. Mo. 1997); Belton v. Astrue, 2012 U.S. Dist. LEXIS 55377 at 13 (W.D. Va. Apr. 16, 2012). If a post-test is not conducted, the reason should be noted in the record. 20 C.F.R. Part 404, Subpart P, Appendix I § 3.00E. A post-bronchodilator test should be conducted if the highest FEV$_1$ value of the pre-bronchodilator test is less than 70% of the expected value.

<u>Id.</u>  It should also be noted if the patient could understand directions and if the patient cooperated during the test.  <u>Id.</u>

However, "Pulmonary function studies performed . . . without testing after bronchodilators cannot be used to assess levels of impairment in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated."  <u>Id.</u>  When seeking qualification under Listing 3.02, the $FEV_1$ result is to be examined according to the individual's height without shoes.  <u>Id.</u> at 3.02A.

In this case, Plaintiff contends that there were two spirometry tests with $FEV_1$ results administered, one in 2009 and one in 2010.  (Doc. No. 13, pp. 3, 5).  For the first testing, Plaintiff's height without shoes was recorded at five foot five inches (5'5").  (Tr. 376-77).  Due to the inconsistency in the patient's medical record in regards to her true height, it was reasonable for the ALJ to use this height for this test, especially when the other tests do not state if Plaintiff's height was taken without shoes.  (Doc. No. 17, p. 5; Tr. 361; Tr. 386; Tr. 822).  Plaintiff's pre-bronchodilator results from this test were 1.3, 1.25, and 1.25, and her post-bronchodilator results were 1.25, 1.2, and 1.2.  (Tr. 376-77).  The highest result of all six tests was 1.3, meaning that the Plaintiff was well above the table value of 1.25 for her recorded height.  (Tr. 376-77); 20 C.F.R. Part 404, Subpart P, Appendix I § 3.02A.  Therefore, the highest $FEV_1$ result for the 2009 test does not satisfy Listing 3.02.

For the second testing in 2010, Plaintiff's height was recorded as five foot six inches (5'6"), yet there was no indication if this record was taken without shoes.  (Tr. 822-28).  Her pre-bronchodilator $FEV_1$ results from this test were 1.07, 1.10, and 1.03.  <u>Id.</u>  There is no record of any post-bronchodilator testing, nor is there record of a bronchodilator being contraindicated, as required by the Listing.  <u>Id.</u>; 20 C.F.R. Part 404, Subpart P, Appendix I § 3.00E.  As a result, the

highest $FEV_1$ result for the 2010 test cannot be used to satisfy Listing 3.02.

Therefore, based on the evidence provided, it was reasonable for the ALJ to conclude that Plaintiff does not meet the specification under Listing 3.02 for chronic pulmonary insufficiency.

C. **Whether the ALJ was Required to Discuss Listing 3.02 when Concluding Plaintiff did not meet the Listing Requirements.**

Finally, Plaintiff argues that the ALJ neglected to consider Listing 3.02 and did not cite Plaintiff's $FEV_1$ results when determining Plaintiff was not disabled. (Doc. No. 13, pp. 6-7). However, as Defendant pointed out, an ALJ is required to cite specific elements of a Listing only if "there is ample evidence in the record to support the determination that the impairments meets or is medically equivalent to one of the listed impairments." Ketcher v. Apfel, 68 F. Supp. 2d 629, 645 (D. Md. 1999); (Doc. No. 17).

Furthermore, the ALJ does not have to specifically mention every Listing when determining that an individual is not disabled so long as the essence of the ALJ's determination (that Plaintiff is not disabled, even under consideration of Listing 3.02) is supported by "substantial evidence." Russell v. Chater, 1995 U.S. App. LEXIS 17254 at 7-8 (4th Cir. N.C. July 7, 1995) (distinguishing Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986)). Notably, Plaintiff declined to re-address this assignment of error in the Response to Defendant's Motion for Summary Judgment. (Doc. No. 18; Doc. No. 17).

In this case, because the highest $FEV_1$ results either did not meet Listing 3.02 requirements or could not be considered under the Listing specifications, and because the ALJ reasonably determined that Plaintiff did not have COPD, there was no evidence in the record to give rise to the determination that Plaintiff's impairments meet or are equal to Listing 3.02. As discussed previously, Plaintiff submitted no evidence of a COPD diagnosis in spite of the

9

statements made by Plaintiff within her medical record that claim she was previously diagnosed with COPD. (Tr. 432-33). Plaintiff's assertion of a prior diagnosis of COPD, without evidence to support the claim, is insufficient. 20 C.F.R. Part 404, Subpart P, Appendix I § 3.00A.

Furthermore, the Court agrees with Defendant's argument that after the ALJ referenced the July of 2009 consultative examination with Dr. Kuremsky, which led to the first spirometry test, and after Plaintiff's counsel discussed the 2010 test at the hearing, it was implied that the ALJ was aware of Plaintiff's $FEV_1$ results from both spirometry tests when making his determination. (Doc. No. 17, p. 8; Tr. 30-32; Tr. 374-380; Tr. 57-58). The hearing proceeded as follows:

> ATTY: So you're using the, okay. She just did get another pulmonary function study done.
> ALJ: Well if you, if you file it it's probably there.
> . . .
> ATTY: Just so you can take a peek before –
> ALJ: Sure. I'll, I'll make note of that.
> . . .
> ATTY: All right. It's listing level at this point.
> ALJ: Okay.

(Tr. 57-58). Therefore, the ALJ sufficiently considered the evidence in his determination that Plaintiff was not disabled under Listing 3.02.

## V. CONCLUSION

Based on the foregoing reasons, the Court finds the ALJ's decision was based on substantial evidence and applied the correct legal standards. Therefore, Plaintiff's Motion for Summary Judgment is DENIED, and the Commissioner's Motion for Summary Judgment is

GRANTED.  Accordingly, the ALJ's decision is AFFIRMED.  The Clerk of Court is directed to close this matter.

    IT IS SO ORDERED.

Signed: July 19, 2013

Frank D. Whitney
Chief United States District Judge